BRADFORD, impleaded with QUACKENBUSH, *against* CONSAULUS, assignee of the Sheriff of the county of *Schenectady.*

A prisoner enjoying the gaol limits under a bond of surety, conditioned that he shall remain a true and lawful prisoner, was arrested on a charge of felony, and committed to close confinement ; and while so confined, broke the gaol and escaped : *held,* that the surety was not liable.

ERROR from the Court of Common Pleas, of the county of *Schenectady.* The action in the Court below was debt on a gaol bond, by *Consaulus,* as assignee, under the statute (1 *R. L.* 429, *s.* 6, 7.) The bond was dated *May* 19*th,* 1819, executed by the defendants below, and after reciting that *Qackenbush* was confined in the gaol of *Schenectady,* by virtue of an execution in favour of the plaintiff below, for $131,27, the condition was, that if *Qackenbush* should remain a true and faithful prisoner, within the gaol liberties, and should not escape, &c. then the bond to be void.

It appeared upon the trial, that *Qackenbush,* while within the liberties by virtue of this bond, on the 29*th August,* 1819, was, by virtue of criminal process, on a charge of felony, committed to close confinement in the *Schenectady* gaol ; from which he escaped *March* 27*th,* 1820, by breaking the gaol. It was for this escape that the action was brought. The counsel for the defendant below, on this ground, moved for a nonsuit, which was overruled ; and a bill of exceptions taken to this point. Verdict and judgment for the plaintiff below.

*A. C. Paige,* for the plaintiff in error. The Sheriff cannot hold a double security against the escape of a prisoner in custody on civil process. If he have the common law security of the prison doors, he cannot have the statute security of a bond. By a commitment for felony, the Sheriff acquired his common law security, and his statute security ceased. It is, in law, equivalent to a surrender of the

prisoner by the surety to the Sheriff, and operates as a discharge of the bond.    Besides, to bring the escape within the bond, it should be from the gaol limits, while the prisoner is in their enjoyment.    The escape was owing to the negligence of the Sheriff.    After he had the prisoner in close confinement, he should have kept him at his peril ; he cannot make his own neglect a cause of action against the surety ; and the assignee has no greater rights than his assignor. (10 *John.* 583, 4.)    Again : the liberty of the debtor is the consideration of the bond, which fails as soon as he is committed to close confinement.    To hold the bail after this, would be unreasonable.    It is true, the bail have no right to make a formal surrender ; but they are discharged by operation of law.    It is like the case of special bail where the principal is confined in the state prison.    An *exoneretur* will be entered even after the time for a regular surrender has expired.    (*Cathcart* v. *Cannon,* 1 *John. Cas.* 28.)    At least, the bond was suspended in its operation during the imprisonment ; and a personal obligation once suspended is destroyed.    A limit bond is one of indemnity merely. (*Barry* v. *Mandell,* 10 *John.* 583.)    The right to grant the limits to a prisoner is confined by the statute (1 *R. L.* 429, s. 6,) to *civil process only ;* and it is absurd to say that a bond could not be taken after the confinement for felony, and yet should be operative.    Had *Qackenbush* been committed to close custody on another execution, it would equally have rendered this bond inoperative ; for the statute was not intended to enlarge the Sheriff's security ; but only to substitute one security for another.    A commitment imposes the common law duty upon the Sheriff of keeping the prisoner at his peril.    The custody of the body is a complete and perfect security in itself.    Like every other agreement, the bond should be construed according to the intention of the parties.    This was to give liberty to the prisoner ; and shall the surety be liable, when the object of his bond is not attained ?    If the surety is insufficient, the Sheriff may commit for that reason alone.    (1 *R. L.* 429, s. 6,) while the surety has no control over his principal ; and

UTICA,
Aug. 1824.

Bradford
v.
Consaulus.

he would be remediless unless discharged by this act of the law; whereas, to hold him released, would be doing justice both to the Sheriff and surety. The bond is intended for the indemnity of the *Sheriff only.* It must pursue the statute strictly, or it is void ; and, to make it good, the case should come precisely within the statute. The condition of the bond was complied with. It is, that he should *remain a true and faithful prisoner on the limits.* This must be construed according to the subject matter. It presupposes a volition on the part of the prisoner to stay or to escape. While he had this, he did remain a true prisoner.

*S. A. Foot,* contra. The records of English jurisprudence afford no example of this defence. That it is the first in this county, is also proved by the fact that no authority in point is produced.

Here was neither an actual nor constructive surrender of *Quackenbush.* To constitute the former, the sureties must deliver the prisoner to the Sheriff ; and give him notice that they will no longer be holden. Can there be a constructive surrender ? No adjudged case for this is produced. If we admit the operation of the bond to be commensurate only with the allowance of the gaol liberties, there is nothing here to show that the Sheriff denied these to the prisoner. To deprive the Sheriff of all security from the bond, it should be shown that he was in default. The commitment here was for a distinct cause, and by operation of law. After the cause of imprisonment is removed, or the prisoner removes it himself, he returns to the limits. A case might be supposed in which it would be very hard upon the Sheriff to be bound to a detention of the prisoner, at all events. Suppose the latter committed for a trifling cause, in consequence of which the Sheriff relaxes his vigilance, and even suffers the prisoner to go at large, as he may do, perhaps, with safety, so far as the second cause of commitment is concerned ; shall such a commitment (it may be) for a moment, work a discharge ? The cases of *exoneretur* do not apply. No doubt the surety might have given notice to the Sheriff, that he would no longer be liable,

UTICA,
Aug. 1824.

Bradford
v
Consaulus.

which would operate as a surrender. If transferred to the state prison by process of law, this would not be an escape. It would confer no right of action against the Sheriff, and none by him against the sureties ; for we agree that the bond is one of indemnity merely. It is said, too, that a second commitment on execution, would work a discharge ; but a case is stated by the Court, in *Hempstead* v. *Weed*, (20 *John.* 72.) which negatives this idea. *Westby* v. *Skinner &* *Catcher*, (3 *Rep.* 71, & *Cro. Eliz.* 365,) is there cited, where the debtor was in the Sheriff's custody, on two executions ; and was delivered over by the Sheriffs on their going out of office, to their successors, on one of the executions only, omitting that of the plaintiff ; and after this assignment, the debtor escaped. It was held, that the debtor was out of the custody of the old Sheriffs, and could not be in custody of the new, on the plaintiff's execution. This shews that each execution stands on separate and independent grounds. The Sheriff would not be bound to hold upon the second execution, because he has no notice but that the surety is still willing to be bound. Would it be fair to make him accountable without notice ? Such a doctrine would lead to great confusion, and produce very serious difficulties. Suppose the first execution only 25 dollars, upon which a gaol bond is taken, and the debtor is afterwards committed on one for $10,000, but discharged 'rom the latter : must the Sheriff take a new bond, or does the prisoner return to the limits and with him the liability of the surety upon the first execution ? The criticism upon the terms of this bond begs the question. The prisoner returns to the limits as soon as he is out of close confinement.

*Paige*, in reply. That no precedent for this defence is to be found, can be no objection to it ; at least, in *England*, where they have no such statute as the one under which this bond was given. A contract cannot be dissolved by the act of one party only. Mere notice from the sureties, therefore, would not discharge them. It would be without effect. The act and operation of law is what we rely up-

on ; and it is enough for our purpose to shew that the bond was inoperative while *Quackenbush* was in close confinement. Whether the bond was cancelled or suspended, the result is the same.

*Curia*, per SAVAGE, Ch. J. By the statute (1 *R. L.* 429,) it is the duty of the Sheriff to permit any prisoner who shall be in his custody on *civil process only*, to go at large within the limits, &c. on giving a bond with sureties. It follows, that if a prisoner be confined on *civil and criminal* process both, the Sheriff cannot take such a bond. If the imprisonment be inconsistent with the liberties of the limits, and a bond should be taken, it would be void.

The enjoyment of the liberties of the limits by the prisoner is, then, the consideration of the bond ; and when the consideration fails, the obligation must be at an end. The bond is taken for the indemnity of the Sheriff only ; but when the prisoner is in close confinement, the Sheriff wants no indemnity. If he should desire it, he cannot take it. The bond, in this case, was valid when taken ; but, by subsequent circumstances, the consideration failed. Shall the obligation, then, continue ? The prisoner was placed in a situation which rendered the taking a bond from him unlawful. Shall the Sheriff then be, permitted to retain a security which it would be unlawful for him to take ? Or shall the previous obligation be suspended ? If so, it must remain supended till the prisoner is discharged from the criminal accusation. The Sheriff is authorized to commit any prisoner upon the limits on a bond, if he shall discover that his bail is insufficient. Suppose the Sheriff, in this case, had committed *Quackenbush* for that cause, would the bail be holden for an escape ? Clearly not. It seems to me, therefore, that the enjoyment of the limits by the prisoner, is not only the consideration, but the condition of the bail's liability. This seems to follow from the language of the bond itself. The condition is, " that the prisoner shall remain a true and faithful prisoner within the liberties of the said gaol ; and shall not, at any time, or in any wise, escape or go

without the limits of the said liberties, until, &c. But if, after taking the bond, the Sheriff does not choose to permit the prisoner the use of such limits, surely neither law nor justice should permit him to hold the sureties liable for an escape from the walls of the prison. In my opinion, the Court below erred, and their judgment should be reversed.